**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ERIC W. SORENSEN<br>Lieutenant Commander, USN, Retired<br>14 Val Haven Drive<br>Morrisonville, NY 12962<br><br>          v.<br><br>HON. RICHARD V. SPENCER<br>Secretary of the Navy<br>1200 Navy Pentagon<br>Washington, DC 20350-1200 | )<br>)<br>)<br>)<br>)      CASE NO. _____<br>)<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

**(APA Review of Final Decision of Board For Correction of Naval Records)**

## JURISDICTION AND VENUE

1.    This action seeks review of the final decision of the Board for Correction of Naval Records (BCNR), dated October 21, 2018,[1] denying Plaintiff's application to correct his naval records. The BCNR's decision is final agency decision under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.

2.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction. Plaintiff raises claims under federal statutes and Department of the Navy regulations.

3.    The Acts of Congress upon which federal question jurisdiction rests are 10 U.S.C. § 1552, *et seq.*, which authorizes and governs the BCNR; 10 U.S.C. § 628, which authorizes judicial review

---

[1]    The BCNR also issued a decision on July 18, 2013, that is within the statute of limitations. LCDR Sorensen does not waive his right to judicial review of that decision. *See Clifton Power Corp. v. F.E.R.C.*, 294 F.3d 108, 110 (D.C. Cir. 2002) ("Instead, the party that had sought administrative reconsideration may, if reconsideration is denied, challenge that denial as well as the agency's original order by filing a timely petition for review of both orders").

of BCNR denials of requests for Special Selection Board (SSB) promotion consideration; and the APA, which authorizes judicial review of final decisions of the BCNR. Under the APA, the Court may reverse decisions of the BCNR that are arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to law or mandatory procedure.

4. This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702 and 10 U.S.C. § 628.

5. Venue in this Court is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391 *et seq*.

## THE PARTIES

6. Plaintiff, Eric W. Sorensen, a United States citizen, retired from the U.S. Navy at the rank of lieutenant commander, grade of O-4. He resides at the address provided in the caption above.

7. Defendant, the Honorable Richard V. Spencer, is the Secretary of the Navy. He is the head of the Department of the Navy. The BCNR acts on behalf of the Secretary of the Navy. He resides at the address provided in the caption above.

## STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or about January 30, 2017, Plaintiff filed an application with the BCNR, requesting several records corrections.

9. On October 21, 2018, the BCNR issued a final decision in which it considered and denied the merits of Plaintiff's claims.

10. Plaintiff has exhausted his administrative remedies and this matter is ripe for judicial review.

11. Pursuant to 28 U.S.C. § 2401(a), Plaintiff's claims must be made within six years of accrual.

12. Plaintiff's clams accrued on October 21, 2018, when the BCNR issued its final decision on the merits of the claims presented.

13.    Plaintiff's claims are timely before this Court.

## STATEMENT OF FACTS

14.    LCDR Sorensen graduated from the United States Navy Officer Candidate School (OCS) and received his commission on July 17, 1981. He promoted to the rank of lieutenant commander (LCDR) on November 1, 1991.

15.    After OCS, LCDR Sorensen earned strong fitness reports[2] (FITREPs) aboard two warships and at a training craft squadron. While serving as the Operations Officer aboard his third ship, the USS NORMANDY, following a forward deployment in support of Operation Desert Storm, Captain (CAPT) Joseph Perrotta, the USS NORMANDY's commanding officer, issued LCDR Sorensen an exceptionally poor FITREP in reprisal for his protected communications, which included three complaints against CAPT Perrotta under Article 138 of the Uniform Code of Military Justice.

16.    The FITREP covered the period of service of February 1, 1991 to September 19, 1991. CAPT Perrotta also attempted to relieve LCDR Sorensen of his duties for cause, but was prevented from doing so by Rear Admiral Philip A. Dur, who was CAPT Perrotta's immediate superior.

17.    After CAPT Perrotta issued LCDR Sorensen the contested FITREP, Admiral Dur removed LCDR Sorensen from CAPT Perrotta's command, later citing his concern that CAPT Perrotta would continue to reprise against LCDR Sorensen and further damage his career.

18.    Subsequent to the contested FITREP, the Navy assigned LCDR Sorensen to the USS SAGINAW, his fourth ship. LCDR Sorensen again discharged his duties in an outstanding manner, earning two very strong FITREPs.

19.    Because the contested FITREP made him ineligible for normal Surface Warfare career-path assignments, the Navy then assigned LCDR Sorensen to the Canadian-Atlantic Sub Area

---

[2]    FITREPs are periodic appraisals of conduct, performance, and suitability for promotion.

3

Headquarters, where he served as Staff Officer in International Plans. He again discharged his duties in an outstanding manner.

20. The Navy implemented a reduction in force in 1995. Navy personnel with 15 years of service were allowed to apply for early retirement.

21. Because his original BCNR petition had been denied and he had no chance for promotion to Commander or further sea assignments, LCDR Sorensen followed the advice of his detailer[3] and the senior officers he consulted and he then applied and was accepted for early retirement. He retired effective September 30, 1995.

**First BCNR Application**

22. LCDR Sorensen first petitioned the BCNR in 1992, seeking the removal of the two FITREPs issued to him by CAPT Perrotta.

23. LCDR Sorensen supported his application with five statements from officers who served with him aboard the USS NORMANDY under the command of CAPT Perrotta. Each officer strongly supported LCDR Sorensen's actions and his request to remove the contested reports.

24. The BCNR requested an advisory opinion on LCDR Sorensen's application from the Bureau of Naval Personnel.

25. The Bureau of Naval Personnel, in turn, wrote CAPT Perrotta and solicited his inputs concerning LCDR Sorensen's application.

26. CAPT Perrotta complied with a written statement in which he generally denigrated LCDR Sorensen's service and added additional allegations of substandard duty performance.

27. By letter dated February 2, 1993 the Bureau of Naval Personnel provided the BCNR an advisory opinion that was based on and included CAPT Perrotta's written submission.

---

[3] A "detailer" acts as career counselor and advisor to naval officers.

28. By letter dated June 14, 1993, the BCNR informed LCDR Sorensen that his application was denied.

29. The BCNR decision letter did not reference or discuss the evidence supplied by LCDR Sorensen.

**Second BCNR Application**

30. In 2010, LCDR Sorensen returned to the BCNR with a reconsideration request. By decision dated August 23, 2010, the BCNR denied the application, stating it was "unable to find any new and material evidence or other matters not previously considered by the Board. Although the information you have submitted is new, it is not material."

31. The Navy did not submit LCDR Sorensen's application to a panel of BCNR members. Nor did the BCNR mention or discuss in its denial the strongly supportive and corroborating testimony of three admirals and numerous other [SENIOR] officers who knew LCDR Sorensen.

32. By memorandum dated November 30, 2010, the Assistant General Counsel, Mr. Robert Woods, reviewed and reversed the BCNR's August 23, 2010 decision.

33. Mr. Woods specifically determined that "the Petitioner is entitled to have his record corrected to remove his fitness report for the period 1 February 1991 to 19 September 1991 issued by CAPT Joseph W. Perrotta."

34. Mr. Woods found it "more likely than not" that LCDR Sorensen's FITREP was an act of reprisal.

35. Mr. Woods credited the statements of RADM Dur, who served as CAPT Perrotta's supervisor, and VADM Gunn[4], who knew of CAPT Perrotta and was aware of his poor service reputation and deficient leadership.

---

[4] VADM Gunn had commanded the Navy Personnel Command and had served as Inspector General.

36. The BCNR directed the removal of the second FITREP. No other relief was provided.

**Third BCNR Application**

37. In November 2011, through counsel (different), LCDR Sorensen again petitioned the BCNR, requesting promotion to grade O-5 (commander) and then to O-6 (captain), with constructive service credit from the date of his retirement to October 1, 2009, with associated pay and allowances.

38. LCDR Sorensen did not request promotion reconsideration under 10 U.S.C. § 628. Rather, he sought direct promotion through BCNR action.

39. By memorandum dated April 19, 2012, the BCNR denied LCDR Sorensen's application.

40. The BCNR offered two bases for denying the application: (1) LCDR Sorensen voluntarily requested "the early retirement that made [him] ineligible to be considered for promotion to commander," and (2) it "was unable to find [his] selection to commander would have been probable, had [he] been considered without the fitness report from 1 February to 19 September 1991."

**Fourth BCNR Application**

41. LCDR Sorensen returned to the BCNR in April 2013, seeking reconsideration of the BCNR's April 19, 2012 denial.

42. LCDR Sorensen again requested *inter alia* promotion to the rank of commander and then captain, and retirement effective October 1, 2009 at the rank of captain with constructive service credit and backpay.

43. LCDR Sorensen contended that but for the now-voided FITREP, he would not have retired and would have promoted to commander and then to captain.

44. Concerning his decision to apply for and accept early retirement, he contended, "it was the unavoidable result of the unlawful act of a vindictive senior officer."

45. LCDR Sorensen provided the BCNR a letter from VADM Gunn, dated April 15, 2013, in which VADM Gun asserted that with the now-removed FITREP in his record, LCDR Sorensen "would not have been screened for Executive Officer nor been promoted to [commander]."

46. VADM Gunn further stated, "When this Board refused his [application] in 1993, and there was no chance that his career could be resurrected, his only recourse as advised by his own detailer and apparently other senior officers was to retire."

47. By letter dated July 18, 2013, the BCNR denied LCDR Sorensen's application.

48. The BCNR explained to LCDR Sorensen that VADM Gunn's April 15, 2013 letter did not persuade the board that his "retirement was not voluntary."

49. The BCNR again explained that it "was still unable to find your selection to commander would have been probable," even without the removed report.

50. LCDR Sorensen also provided the board a letter from Vice Admiral Henry C. Griffin III, dated November 23, 2011, who noted that LCDR Sorensen "was extremely successful in every other tour" and that LCDR Sorensen's department head FITREPs "would have been sufficient to screen for Commander . . . and it is likely he would have screened for Captain".

51. The BCNR also denied LCDR Sorensen's request to expunge the first FITREP he received from CAPT Perrotta, which the BCNR concluded would have prevented LCDR Sorensen's selection for promotion to commander.

**Fifth and Final BCNR Application**

52. On or about January 30, 2017, LCDR Sorensen again petitioned the BCNR for reconsideration and requested a personal appearance hearing.

53. LCDR Sorensen requested the correction of his records to reflect *inter alia* that he did not voluntarily retire on September 30, 1995, but continued to serve on active duty until he accrued 20 years of naval service (on July 17, 2001), with backpay and allowances; and that his records be

submitted for Special Selection Board (SSB) promotion consideration pursuant to 10 U.S.C. § 628(a)(1).

54.  LCDR Sorensen argued that it was error and injustice for the BCNR to have relied on CAPT Perrotta's statement contending, "The BCNR might as well have phoned CAPT Perrotta and asked if he were guilty of reprisal, an offense under the UCMJ. CAPT Perrotta's answer was perfectly predictable."

55.  He further argued that the BCNR committed legal error by failing to grant full and fitting relief in 2010, when Mr. Woods overruled the BCNR and directed the removal of the second FITREP.

56.  LCDR Sorensen also argued that the BCNR erred by failing to grant his request to void his "voluntary" retirement and award constructive service credit and backpay.

57.  The Navy solicited and received an Advisory Opinion from Navy Personnel Command dated August 15, 2017. The Advisory Opinion recommendation was that "no action be taken" on LCDR Sorensen's application.

58.  The Advisory Opinion asserted that LCDR Sorensen "was granted TERA specifically because of his voluntary request" to retire. The Advisory Opinion did not address the other assertions of error and injustice and supporting statements from senior officers that LCDR Sorensen advanced.

59.  LCDR Sorensen rebutted the Advisory Opinion on September 19, 2017, again informing the BCNR that his "voluntary" early retirement "was the direct result of the adverse FITREP and the BCNR's failure to remove it in 1993. In other words, the error and injustice in his record—the now voided report—was the reason for his early retirement." He had envisioned a long career in the Navy and would not have retired under TERA absent the now-removed FITREP.

60. He further argued, "The AO [Advisory Opinion] fails to recognize, as did the BCNR previously, that LCDR Sorensen's early retirement was an injustice because it was caused by the reprisal adverse report. To remedy the injustice, then, the BCNR not only needed to void the reprisal report, it needed to void the retirement. That is what is must now do to fulfill its legal duty to provide full and fitting relief."

61. By letter dated October 21, 2018, the BCNR denied LCDR Sorensen's application in its entirety.

62. The BCNR found that LCDR Sorensen "may have been competitive for promotion to O-5 [commander]" had he not been compelled to apply for early retirement. It is unclear whether the BCNR based that finding on LCDR Sorensen's corrected record or his original record.

63. The BCNR did not directly address LCDR Sorensen's request to void his voluntary retirement and award him constructive service credit with backpay.

64. Concerning LCDR Sorensen's request for SSB promotion consideration, the BCNR referred to a letter LCDR Sorensen received from the Assistant Secretary of the Navy (Manpower and Reserve Affairs) dated June 18, 2014, in which the Assistant Secretary asserted that SSB consideration was neither feasible nor appropriate.

65. The BCNR asserted that it considered the Assistant Secretary's letter "a final agency action."

66. The BCNR denied LCDR Sorensen's request for a personal appearance hearing, as it denied every such request for more than 20 years.

## LEGAL CLAIMS

**CLAIM 1: THE BCNR COMMITTED LEGAL ERROR BY DENYING LCDR SORENSEN'S REQUEST TO VOID HIS RETIREMENT AND AWARD HIM CONSTRUCTIVE SERVICE CREDIT.**

67. Paragraphs 1 through 66 are incorporated herein by reference.

68.     LCDR Sorensen argued before the BCNR in his fourth and fifth applications that the direct cause of his "voluntary" retirement was the contested FITREP.

69.     Had the BCNR lawfully performed its duties and removed the contested FITREP when LCDR Sorensen first applied to the Board in 1992, he would have remained competitive for command selection and promotion and therefore would not have requested early retirement.

70.     As he argued to the BCNR, "LCDR Sorensen's early retirement was an injustice because it was caused by the reprisal adverse report. To remedy the injustice, then, the BCNR not only needed to void the reprisal report, it needed to void the retirement." *See Haselwander v. McHugh*, 774 F.3d 990, 998 (D.C. Cir. 2014) ("The obvious 'error' in this case is the void in Haselwander's medical record; the obvious 'injustice' is that the void in Haselwander's medical record has prevented him from receiving the Purple Heart to which he is entitled").

71.     The BCNR's failure to void LCDR Sorensen's early retirement and award him constructive service credit was error and injustice. *See Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975) ("when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its statutory mandate."); and *Duhon v. United States*, 198 Ct. Cl. 564, 570 (1972) ("The correction boards were created to remedy wrongs not to confound them").

72.     The BCNR's denial of LCDR Sorensen's request to void his early retirement and award constructive service credit was arbitrary, capricious, unsupported by substantial evidence, and contrary to law.

**CLAIM 2: THE BCNR COMMITTED LEGAL ERROR BY FAILING TO PROVIDE FULL AND FITTING RELIEF.**

73.     Paragraphs 1 through 72 are incorporated herein by reference.

74.     The fourth and fifth BCNR decisions are unlawful.

75. The BCNR is under a legal duty to provide full and fitting relief. Where the BCNR "in its discretion grants favorable relief to an applicant, it may not stop short of granting full relief to the applicant." *Teichman v. United States*, 65 Fed. Cl. 610, 617 (2005) (citation omitted).

76. On November 30, 2010, Mr. Woods directed the BCNR remove the contested FITREP.

77. The BCNR directed no other relief, such as SSB consideration or constructive service credit.

78. In his fourth and fifth applications to the BCNR, LCDR Sorensen explicitly requested the voidance of his early retirement with constructive service credit.

79. In his fifth application, LCDR Sorensen claimed a legal right to SSB consideration under the provisions of 10 U.S.C. § 628.

80. LCDR Sorensen made clear the nature of the error and injustice he suffered: The unjust reprisal FITREP, which in turn caused him to be non-competitive for command assignment and promotion, and which was the cause of his decision to seek early retirement.

81. The BCNR acknowledged that the reprisal FITREP rendered LCDR Sorensen non-competitive for promotion.

82. The BCNR's removal of the reprisal FITREP without providing the obvious additional relief of voiding LCDR Sorensen's early retirement and directing SSB promotion consideration was contrary to law. *Yee v. United States*, 512 F.2d 1383, 1386-87 (Ct. Cl. 1975) ("The failure of the AFBCMR to take either additional step rendered its decision only a partial correction. And in this case, a partial correction was no correction at all").

83. The BCNR failed to provide the full and fitting relief required by law, rendering its decisions arbitrary, capricious, unsupported by substantial evidence, and contrary to law.

**CLAIM 3: THE BCNR COMMITTED LEGAL ERROR BY FAILING TO GRANT LCDR SORENSEN'S REQUEST FOR SSB PROMOTION CONSIDERATION.**

84. Paragraphs 1 through 83 are incorporated herein by reference.

85. 10 U.S.C. § 628(a)(1) requires the Secretary of the Navy to convene a SSB where "a person who should have been considered for selection for promotion from in or above the promotion zone by a promotion board was not so considered."

86. LCDR Sorensen argued to the BCNR that but for the reprisal FITREP, and the BCNR's failure in 1993 to void the report, he would have continued his naval service and would have been competitive for promotion to commander, minimally.

87. LCDR Sorensen supplied the BCNR statements from two retired Navy admirals who opined that following the removal of the reprisal FITREP in 2010, LCDR Sorensen's record returned to a state of competitiveness given his overall record of outstanding service.

88. The now-voided reprisal FITREP issued to LCDR Sorensen was the proximate cause of his non-competitiveness for promotion and his decision to seek early retirement.

89. The removal of the reprisal FITREP by the BCNR in 2010 also should have resulted in the voiding of LCDR Sorensen's early retirement and his administrative reinstatement to the Navy, with SSB consideration.

90. In the event the Court directs the voidance of LCDR Sorensen's early retirement and his administrative reinstatement to the Navy, it should further direct his consideration for promotion to commander by a SSB.

91. The BCNR's decision to deny SSB consideration to LCDR Sorensen was arbitrary, capricious, unsupported by substantial evidence, and contrary to law.

**REQUEST FOR RELIEF**

Wherefore, LCDR Sorensen respectfully requests that the Court grant the following relief:

(A) Hold unlawful in their entirety and set aside the BCNR's 2013 and 2018 decisions;

(B) Enter judgment in favor of LCDR Sorensen on all counts of this complaint;

(C) Remand the matter to the BCNR for further actions in accordance with the Court's findings, decision, and order;

(D) Upon proper application, award LCDR Sorensen attorney fees under the Equal Access to Justice Act; and

(E) Award such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/Brian D. Schenk*

Brian D. Schenk
Midwest Military & Veterans Law, PLLC
310 4th Ave. S, Ste 5010
Minneapolis, MN 55415
Ph: (202) 557-6570
Fax: (612) 206-3170
Email: brian@militaryandveteranslaw.com

Dated: February 7, 2019